Application of the OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY for the approval of the issuance of $10,000,000 State Office Building Revenue Bonds and the sale thereof to the State Treasurer of the State of Oklahoma.

No. 39237.

Supreme Court of Oklahoma.

Oct. 11, 1960.

Mac Q. Williamson, Atty. Gen., George J. Fagin, Norman E. Reynolds, Oklahoma City, for Oklahoma Capitol Improvement Authority.

DAVISON, Chief Justice.

This is an original proceeding instituted in this court by Oklahoma Capitol Improvement Authority for the approval of the issuance and the purchase by the State Treasurer. of the State of Oklahoma, of State Office Building Revenue Bonds proposed to be issued by said Authority in the principal amount of $10,000,000 under the provision of Title. 62, Chapter 1c, Session Laws 1959 (73 O.S.1959, Supp., §§ 151–166), hereinafter referred to as the Act.

The application was filed pursuant to and is presented to this court after·giving the notice provided for in said Act. The Act confers original· jurisdiction on the court to hear and determine the application. Transcript of the proceedings of the Authority and supporting documents are attached to the application. No protest or opposition has been. filed or made to the application.

The Act has the stated purpose of providing space for offices for departments and agencies of the state, particularly those now or hereafter required to pay rent. The Act creates the Authority as a body corporate and politic and as an instrumentality of the state, with authority to acquire land and to erect, equip, operate and maintain a building or buildings for use of the state and for federal agencies and departments. The project is to be financed by the issuance and proceeds from the above mentioned bonds, and interim bonds, which are to be retired solely from the revenues from the office buildings. Provision is made for refunding the bonds. It is specifically stated in the Act (and in the bonds and proceedings of the Authority) that the bonds shall not be an indebtedness of the state. Provision is made in the Act for sale to, and required.purchase of the bonds, by the State Treasurer, with the written approval of the State Depository Board, as an investment of public monies not needed to meet current expenditures. The Act further provides that upon confirmation by the State Budget Director and State Depository Board that uninvested cash was needed to meet demand orders on the State Treasury, the State Treasurer was to sell the bonds to meet such demands. The Authority, in cooperation with the State Board of Public Affairs, is authorized to require state departments to occupy space in the buildings and pay rent. When the bonds are retired the building is to become the property of the state.

The Act need not be here copied in full.

In proceeding under the Act the Authority adopted a resolution providing for the construction of two office buildings upon sites to be acquired by it and for the issuance and sale to the State Treasurer of the above described bonds in the amount of $10,-000,000. The resolution is in substantial conformance with the Act. The Authority also adopted a proposed form of lease for use in renting office space.

There is also submitted to this court the written statement of the State Treasurer evidencing his readiness and willingness to purchase the bonds; the written certification of the State Depository Board that said bonds may be safely purchased by the State Treasurer, as an investment of public monies without handicapping the state in promptly meeting its obligations; and the written opinion and certificate of the At-

torney General of the State of Oklahoma, after examination of the resolution and the above documents, finding the proceedings to be constitutional, lawful and regular and the bonds valid obligations in accordance with the Act.

■ Section 10 of the Act confers jurisdiction upon this court to hear the application. In Application of State of Oklahoma Building Bonds Commission, 202 Okl. 454, 214 P.2d 934, 935, we said in the first syllabus by the court:

"In matters of general public interest, matters which directly affect the sovereign rights and powers of the state, the Legislature has power, under Art. 7, sec. 2, Oklahoma Constitution, to confer original jurisdiction upon this court."

In determining the constitutionality of the subject Act, this court is guided in its consideration thereof by well established general precedents.

■ In construing the constitutionality of a statute, the Supreme Court is not authorized to consider its propriety, desirability, wisdom, or its practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. The function of the court is clearly limited to the determination of the validity or invalidity of the act. There is a presumption that the Act is constitutional. The Legislature, unless prohibited by the Constitution, has the right to declare fiscal policy, and the question as to the wisdom of the policy is not within the scope of authority of the Supreme Court. Courts must sustain statutes, if possible, and nullify them only when they are clearly unconstitutional. Application of State of Oklahoma Building Bonds Commission, supra.

The question arises as to whether the Act and the bonds create a state debt in violation of Art. 10, Oklahoma Constitution, Section 23, as amended, and Sections 24 and 25.

■ This court has approved statutes creating "self-liquidating" projects and the bonds issued to construct them as not creating a state debt, where only the revenue therefrom was usable for retirement of the bonds and no recourse was had to the revenue of the state for that purpose. Application of Oklahoma Turnpike Authority, 203 Okl. 335, 221 P.2d 795; Application of Board of Regents for Oklahoma Agricultural & Mechanical Colleges, 196 Okl. 622, 167 P.2d 883; Baker v. Carter, 165 Okl. 116, 25 P.2d 747. See also Application of Oklahoma Educational Television Authority, Okl., 272 P.2d 1027, wherein the distinction between tax revenue and other revenue as a source of funds to retire the bonds was eliminated.

■ Under the present Act and the resolution of the Authority and the provisions of the bonds, the bonds are expressly declared not to be a debt of the state or of the Authority but are payable solely from the rents and revenues from the buildings. In these respects the debt, resolution and bonds meet the requirement of our decision cited above. The bonds are not a debt of the state.

However, the rents and revenues are to be paid by state departments and federal agencies occupying space in the office buildings. The portion paid by state departments will necessarily be from state revenue. This situation has not previously been presented to this court for determination.

Similar situations have been presented to appellate courts of other states and the Authority has cited a number of decisions from other jurisdictions in support of its application. A careful examination of these decisions reveals items of basic difference in law or fact from that presented by the present application. They will be cited as authority only on those points or matters applicable to our situation.

■ It is too apparent to require citation of authority that housing and proper housing is essential to the proper and efficient performance of the duties and work of a state department or agency. If the state

owns the housing there is no problem. If the state or department does not own or possess the housing, then it must be secured in other ways. One of these ways is by leasing. Use of state funds to pay the rent is a proper expenditure.

The lease form adopted by the Authority provides for an indeterminate term with rental fixed on a monthly basis with provision for revision in amount to provide funds to retire the bonds. In this connection it is pointed out that not all the rent will come from state departments but that a portion of the revenue will accrue from federal agencies. We see no real distinction between a state department entering into a lease agreement and paying rent to a private party and having the same transaction with the Authority. In either event the state department receives a service in the form of housing which the state itself does not own. In addition the state will obtain two office buildings paid for in part from rentals from federal agencies.

In Book v. State Office Building Commission, 238 Ind. 120, 149 N.E.2d 273, 287, the Supreme Court of Indiana had before it an appeal in an action to enjoin a state office building commission from constructing a state office building. The act of the Indiana legislature and the proposed lease to be made with the state departments were similar and in some respects identical to the present act and lease. The Indiana court expressed the sentiments above set out, and also said:

"The lease agreement hereinabove mentioned would not create an obligation of the State to any greater extent than would a lease with private individuals or corporations, such as is now in effect for office space that is being leased by State departments and agencies outside the State House.

\*   \*   \*   \*   \*   \*

"The payments for use and occupancy pursuant to § 60–2115, supra, are bona fide rental charges and they are not legally enforceable until and unless the occupant has a right to and does enjoy the use of the space allotted to it. \*   \*   \*"

The concluding paragraph of Art. 10, Oklahoma Constitution, Section 23, as amended, provides in part:

"The State shall never create or authorize the creation of any debt or obligation, \*   \*   \* against the State, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as provided in this amendment and in Sections Twenty-four (24) and Twenty-five (25) of Article Ten (X) of the Constitution of the State of Oklahoma. \*   \*   \*"

The last two exceptions relate to debts created by the affirmative vote of the people and to debts necessary to repel invasion.

The predominant purpose of this amendment is to make the fiscal years within the legislative biennium the basis for the encumbrance and expenditure of revenues appropriated. Rountree v. Phelps, 200 Okl. 528, 197 P.2d 973.

In Boswell v. State, 181 Okl. 435, 74 P.2d 940, 947, we held that one legislative assembly cannot guarantee the span of life of its legislation relating to the fiscal affairs of the state beyond the period of its biennium.

■ The question is whether the Act and proceedings of the Authority create an indebtedness beyond the biennium and bind subsequent legislatures to make appropriations to pay the rental of state departments occupying space in the buildings. It is our opinion that they do not have this effect.

In State ex rel. Thomson v. Giessel, 267 Wis. 331, 65 N.W.2d 529, 536, the court said:

"While in one sense any contract to pay money in the future creates a debt, state and municipal governments might be unable to function except under severe handicap if all such contracts were held to create debts within the meaning of constitutional and statutory prohibitions relating to govern-

mental indebtedness. Because of this there is a tendency upon the part of courts to exclude contracts payable by a government in installments in the future when the consideration which the payor is to receive in return for such payments is also to be provided in the future."

This general statement of law has been recognized by this court in connection with contracts with municipalities. There is no reason why it should not apply to the present Act and lease agreement. In Public Service Co. of Oklahoma v. City of Tulsa, 174 Okl. 58, 50 P.2d 166, we stated in the first syllabus:

"Where it is sought to bind a municipality on its contract for future services of claimant, or for supplies to be furnished in the future, the money to be spent by said municipality under the contract must not be in excess of appropriation for that purpose, for that year, or in excess of the part remaining in said fund at the time the contract is executed. If the contract does not prescribe a definite and certain total sum to become payable, but prescribes payment on a quantum basis, only that quantum of the services or supplies may be paid for as were performed or furnished up to the time that the fund became legally and validly exhausted, and not thereafter (section 26, art. 10, Oklahoma Constitution)."

See also Board of County Commissioners of Tulsa County v. Mullins, 202 Okl. 628, 217 P.2d 835.

We now turn to the proposition of purchase of the bonds by the State Treasurer. In Application of State of Oklahoma Building Bonds Commission, 202 Okl. 454, 214 P.2d 934, supra, and Application of State of Oklahoma Building Bonds Commission, Okl., 288 P.2d 366, this court approved a purchase by the State Treasurer of state building bonds issued pursuant to a vote of the people. The provisions of the statutes relative to purchase of those bonds by the State Treasurer are practically identical with the provisions of the subject Act. A factual difference is that the subject bonds are not state obligations. This goes to the wisdom of the legislation rather than its legality.

Section 4(a) of the Act is in part as follows:

"* * *. It shall be the responsibility of the State Depository Board, in approving such investment, to limit its approval to the investment of only that portion of such public monies as it deems to be more than sufficient to meet current expenditures payable from public monies. * * *"

As stated in 214 P.2d 934, 939, supra:

"The Legislature has placed that duty upon that board, the State Depository Board, as it was within its power to do. Under all the circumstances here presented this court has no authority to question, in any degree, the findings of the board. Our jurisdiction is limited to a consideration of those elements and characteristics of the act which determine its constitutionality. * * *"

Section 3(c) of the Act contains provisions for further and subsequent issue of bonds "for an additional building or buildings". It is our opinion and we conclude that it is unnecessary for this court to approve or pass upon the legality of any such subsequent bond issue for an additional building or buildings. We are, therefore, not passing upon, or approving, the legality of any proposed issue for this stated purpose, but are approving only the bonds issued in the sum of $10,000,000.

Said bonds in the sum of $10,000,000 are approved and the purchase thereof by the State Treasurer, with such public monies as are available under the provisions of Title 62, Chap. 1c, Session Laws 1959 (73 O.S. 1959, Supp., §§ 151–166), is also approved.

Time within which petition for rehearing may be filed herein is fixed at five (5) days from this date.

The regular Justice, WILLIAM A. BERRY, having filed his certificate of disqualification, the Governor of the State of Oklahoma appointed the Honorable WAYNE W. BAYLESS of Oklahoma City as special judge in said cause.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, HALLEY, JOHNSON and BAYLESS, JJ., concur.

BLACKBIRD, JACKSON and IRWIN, JJ., dissent.