Dear Representatives, Graves
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. Is A.G. Opin. No. 83-182, which was issued prior to theOklahoma Supreme Court's decision in York v. Turpen,681 P.2d 763 (Okla. 1984), advisory only as to the constitutionality 63O.S. 1-731 (B) and 63 O.S. 1-737 (1981)?
 2. Is the Oklahoma State Department of Health required toenforce the provisions of 63 O.S. 1-731(B) and 63 O.S.1-737 (1981) as well as any regulations promulgatedthereunder?
¶ 1 Your questions concern an agency's obligation to enforce a statute which the Attorney General opined to be unconstitutional priol to the Oklahoma Supreme Court's holding in York that such opinions are advisory only.
 I.
¶ 2 In York v. Turpen, 681 P.2d 763 (Okla. 1984), the Oklahoma Supreme Court held that an opinion of the Attorney General stating that an act of the legislature is unconstitutional is advisory only, and not binding upon state officers until finally so determined by an action in a court of competent jurisdiction. The issue was revisited by the Oklahoma Supreme Court in its Supplemental Opinion on Rehearing in BranchTrucking Co. v. Oklahoma Tax Commission, 801 P.2d 686 (Okla. 1990):
 The Attorney General is the "chief law officer" of Oklahoma. Okla. Stat. tit. 74, 18 (1981). Since 1919, the Attorney General's opinions have been binding on state officials unless the opinion is inconsistent with a final determination of a court of competent jurisdiction. See Rasure v. Sparks, 75 Okla. 181, 183 P. 495 (1919). In York v. Turpen, 681 P.2d 763
(Okla. 1984), this Court created an exception to this general rule.
 In York, the Attorney General effectively declared a statute unconstitutional. Id. at 765. This Court found that "the issuance of an opinion finding an act of the legislature unconstitutional is . . . an unwarranted encroachment upon the power of the legislature and the unique duty of the courts." The opinion underlying the present issue does not declare any statute unconstitutional and, therefore, does not fall within the York exception.
801 P.2d at 690.
¶ 3 The binding effect of Attorney General opinions "is a creature of judicial origin." York at 767. The rationale for the York exception is that a binding Attorney General's opinion as to the unconstitutionality of a statute is an encroachment upon the power of the legislature and the duty of the courts, and so is prohibited by Article IV, Section 1 of the Oklahoma Constitution.
¶ 4 Accordingly, A.G. Opin. No. 83-182 is advisory only as it opines that 63 O.S. 1-731(B) and 63 O.S. 1-737 (1981) are unconstitutional. The fact that the opinion was rendered prior to the York decision in no way affects this result. If to give binding effect to opinions of the Attorney General as to the unconstitutionality of a statute runs afoul of the Oklahoma Constitution, such is true regardless of when the opinion was issued.
¶ 5 Retroactivity is the traditional common law approach to implementation of decisions such as the one in York. Thompson v.Presbyterian Hospital, Inc., 652 P.2d 260 (Okla. 1982). The Court looks to three factors to determine if a new constitutional rule should be applied retroactively: (1) the purpose of the rule; (2) the extent of reliance upon the old rule; and (3) the burden placed upon the administration of justice by the increased volume of retrials. Id. at 268. Foremost of the elements in terms of importance is the purpose of the new rule. Id.
¶ 6 As noted above, the purpose of the rule in York is to avoid a separation of powers problem created when state officials are bound by Attorney General opinions on the constitutionality of a statute. This purpose would be significantly thwarted by applying York only to post-York Attorney General opinions. In addition, there wouldn't appear to be any effect on the judicial process from applying York in this manner, as the courts have never been bound to follow opinions of the Attorney General.Goodin v. Board of Education, 601 P.2d 88 (Okla. 1979). Moreover, it has been seven years since the Court's decision inYork, and the issue of its retroactivity has yet to be addressed by that Court. That in and of itself is an indicator that little impact on the judicial system can be anticipated. Application of the second factor — reliance — involves factual questions which are not appropriately addressed in an opinion of the Attorney General.[1]
¶ 7 Applying these principles to your specific question we find that all opinions of the Attorney General which hold that Oklahoma statutes are unconstitutional are advisory only, regardless of the date of issuance. Therefore, A.G. Opin. No. 83-182 is advisory only.
 II.
¶ 8 The Oklahoma State Department of Health was created by 63O.S. 1-105 (1981). It consists of the State Commissioner of Health and such divisions, sections, bureaus, offices, and positions as may be established by the State Board of Health or by law. Id. The State Board of Health has the power and duty to "adopt such rules, regulations, and standards as it deems necessary to carry out any of the provisions of the [Oklahoma Public Health Code]." 63 O.S. 1-104(b)(2) (1981). The State Commissioner of Public Health is given the power and duty to "enforce rules, regulations and standards adopted by the State Board of Health" and to "cause investigations, inquiries and inspections to be made, and hold hearings and issue orders pursuant to the provisions of the Administrative Procedures Act, to enforce and make effective the provisions of [the Oklahoma Health Code], and all rules, regulations and standards adopted by the State Board of Health pursuant to law. . . ." 63 O.S.1106(b)(2) and 63 O.S. 1106(b)(4) (1990).
¶ 9 All public officers and employees also have a general duty to support the laws of the United States and the laws of the State of Oklahoma, and must execute an oath to that effect upon entering into their duties. 51 O.S. 2 (1981); 51 O.S. 36.2A
(1981). The laws to which a public official must be obedient have a certain hierarchy. The Oklahoma Constitution is the highest written law of the State. State v. Johnson, 215 P. 945 (Okla. 1923). Moreover, Article I, Section 1 of the Oklahoma Constitution states that: "The State of Oklahoma is an inseparable part of the Federal Union, and the Constitution of the United States is the supreme law of the land." Thus, in the event of a conflict between a state statute and the Federal Constitution, a public official must support the Federal Constitution. State v. Huser, 184 P. 113 (Okla. 1919).
¶ 10 The general presumption is that a law is constitutional and, until its unconstitutionality is judicially established, subordinate executive functionaries must treat it as such.Caruth v. State, 223 P. 186 (Okla. 1924). However, this general guideline does not allow an official to mindlessly follow a statute of doubtful constitutional validity. In State v. Boardof County Commissioners of Creek County, 107 P.2d 542 (Okla. 1940), the Oklahoma Supreme Court struck down a statute which allowed the reduction of the tax assessment on some 4,264 separate pieces of property. In refusing to allow those taxpayers to retain the benefit of the reductions, the Court made the following observation:
 To hold otherwise . . . would be to say that constitutional inhibitions may be lightly defeated and circumvented by subordinate executive officers, acting in excess of their lawful authority, provided the acts of such officers were fully consummated before the extent of their authority is determined in the proper forum — namely the courts. This we cannot do. . . . It would encourage hasty action on the part of administrative officers, where deliberation and caution should be encouraged instead. . . . It would open an easy avenue for the evasion and defeat of constitutional safeguards, not only in tax matters, but in others.
107 P.2d at 554.
¶ 11 And in Oklahoma Educational Assoc. v. Nigh, 642 P.2d 230
(Okla. 1982) the Court stated the general rule that an unconstitutional statute confers no rights, creates no liability, and affords no protection, and then added:
 An unconstitutional law should not be applied to work a hardship or impose liability on a public official or citizen who acted in good faith and relied on the validity of a statute before courts have declared it invalid, or until advised by proper officials of its unconstitutionality.
642 P.2d at 239. (Emphasis added).
¶ 12 Caution and deliberation are also required in order for a public official to maintain his qualified immunity from civil rights liability for the performance of discretionary functions. See Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988) (officials qualifiedly immune from liability under 42 U.S.C.A. 1983 if their conduct does not violate clearly established rights of which a reasonable person would have known).
¶ 13 Even since York, the Oklahoma Supreme Court has commented that "whether the legal advice of the Attorney General be considered binding or merely advisory, a state agency is deemed protected from liability when it heeds the advice given by the chief law officer of the state." Allen v. Board of Trusteesof the Oklahoma Uniform Retirement System for Justices andJudges, 769 P.2d 1302, n. 33 (Okla. 1988).
¶ 14 Accordingly, a public official's duty to support the Constitutions of the United States and the State of Oklahoma requires caution and deliberation prior to enforcing a statute of doubtful constitutionality, even though the invalidity of that particular statute has not been judicially determined.
¶ 15 Although A.G. Opin. No. 83-182 is not itself binding on the Oklahoma State Department of Health and its officials, the pronouncements of the United States Supreme Court are. The United States Supreme Court cases discussed in A.G. Opin. No. 83-182 found statutes virtually identical to 63 O.S. 1-731(B) and 63O.S. 1-737 (1981) to be unconstitutional. The advisory nature of the Attorney General's opinion in this regard subtracts nothing from a state official's duty to support the law of the United States, particularly as it has been established by the highest court in the land.
¶ 16 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. The Oklahoma Supreme Court's decision in York v. Turpen,681 P.2d 763 (Okla. 1984), which rests upon Okla. Const. ArticleIV, Section 1, renders all opinions of the Attorney Generalissued under 74 O.S. 18b(e) (1990), which declare an act ofthe legislature unconstitutional, advisory only, regardless ofwhether the opinion was rendered before or after the Yorkdecision. Therefore, A.G. Opin. No. 83-182 which found 63 O.S.1-731(B) and 63 O.S. 1-737 (1981), unconstitutional isadvisory only.
 2. The Oklahoma State Department of Health and its officialshave the duty to support the laws of the United States and thelaws of the State of Oklahoma, and under Article I, Section 1 ofthe Oklahoma Constitution have no duty to enforce a state statutewhich is in violation of the United States Constitution asexplicated by clearly applicable decisions of the United StatesSupreme Court, and a public official's enforcement of such astatute may well deprive that official of qualified immunity fromliability under 42 U.S.C.A. 1983. While opinions of the AttorneyGeneral are advisory only under York v. Turpen, 681 P.2d 763(Okla. 1984), and Okla. Const. Article IV, Section 1, publicofficials may still follow the advice given to them by theAttorney General. 74 O.S. 18b(e) (1990).
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
SHARON K. O'ROKE ASSISTANT ATTORNEY GENERAL
[1] The question of an official's reliance on the binding nature of Attorney General opinions prior to the York decision is not raised by your request, and would, in any event, entail a factual inquiry which is inappropriate for the Attorney General to undertake.