Dear Representative Hickman:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 What is considered a "routine sick call within the county jail" pursuant to the provisions of Section 38.3 of Title 57 of the Oklahoma Statutes which requires county sheriffs to be responsible for "routine sick calls within the county jail" for inmates retained in the county jail after a judgment and sentence has been entered?
 I. SECTION 38.3(C) OF TITLE 57
Section 38.3 of Title 57 of the Oklahoma Statutes sets out who pays health care providers for medical care and treatment of inmates retained in county jails after judgment and sentencing. 57 O.S.Supp. 2010, § 38.3[57-38.3]. In this Opinion we will address your question in two parts. First, we will directly address the meaning of "routine sick call within the county jail" as used in subsection (C) of Section 38.3 of Title 57. Secondly, we will address whether Section 38.3 of Title 57 violates provisions of the Oklahoma Constitution. Section 38.3 provides as follows:
 A. As used in this section:
 1. "Emergency care" means the medical or surgical care necessary to treat the sudden onset of a potentially life- or limb-threatening condition or symptom; *Page 2 
 2. "Dental emergency" means acute problems in the mouth exhibiting symptoms of pain, swelling, bleeding or elevation of temperature; and
 3. "Mental health emergency" means a person exhibiting behavior due to mental illness that may be an immediate threat to others or himself or herself that renders the person incapable of caring for himself or herself.
 B. The Department of Corrections shall reimburse health care providers for medical care and treatment for inmates retained in county jails after a certified copy of a judgment and sentence has been entered pursuant to the provisions of Section 980 of Title 22 of the Oklahoma Statutes or pursuant to the provisions of Section 988.12 or 991a-2 of Title 22 of the Oklahoma Statutes. Health care providers that are in the network established by the Department of Corrections in conjunction with the State and Education Employees Group Insurance Board shall be reimbursed according to the fee schedule established for that network; provided, that reimbursement will be no less than the fee structure that was in effect January 1, 2007, or the current fee schedule, whichever is greater. Health care providers that are out of network shall be reimbursed according to the Oklahoma Medicaid Fee Schedule; provided, that reimbursement shall be no less than the fee structure that was in effect January 1, 2007, or the current fee schedule, whichever is greater. Prior to obtaining nonemergency care outside the county jail facility, authorization must be received from the Department of Corrections. For any emergency care, dental emergency or mental health emergency care obtained outside the county jail facility, the Department of Corrections must be notified within twenty-four (24) hours. The Department of Corrections is hereby authorized to reject claims if proper notification has not been provided.
 C. The sheriff shall be responsible for providing and paying for medical, dental and mental health care screening when an inmate is admitted, routine sick calls within the county jail and access to on-site physician services as is routinely provided for all inmates in the custody of the sheriff and as provided by Section 52 of Title 57 of the Oklahoma Statutes.
 D. The Department of Corrections shall pay the pharmacy provider for medications provided to inmates retained in county jails after a certified copy of a judgment and sentence has been entered pursuant to the provisions of Section 980 of Title 22 of the Oklahoma Statutes or pursuant to the provisions of Section 988.12 or 991a-2 of Title 22 of the Oklahoma Statutes. If the pharmacy provider is a Medicaid provider, the pharmacy provider must bill the Department at Medicaid rates. The county jail shall be responsible for *Page 3 
paying for any medications that are not listed on the Department of Corrections formulary, unless the county jail receives a written exception from the Department.
 E. Dental and mental health care shall be provided through the designated host facility of the Department of Corrections for inmates retained in county jails after a certified copy of a judgment and sentence has been entered pursuant to the provisions of Section 980 of Title 22 of the Oklahoma Statutes or pursuant to the provisions of Section 988.12 or 991a-2 of Title 22 of the Oklahoma Statutes. Each county jail is encouraged to work with local community mental health centers to provide necessary medications and emergency services that would be reimbursed pursuant to the provisions of this subsection.
 F. The sheriff shall be responsible for transportation and security of inmates to all outside health care appointments including host facilities of the Department of Corrections.
 G. Neither the Department of Corrections nor the sheriff shall be responsible for the cost of health care while an inmate is on escape status or for any injury incurred while on escape status.
 H. The Department of Corrections shall not be responsible for payment of health care of inmates housed in the county jail under the following circumstances:
 1. Prior to entry of a certified judgment and sentence pursuant to the provisions of Section 980 of Title 22 of the Oklahoma Statutes;
 2. When an inmate is detained in the county jail pursuant to a writ of habeas corpus;
 3. When an inmate is detained in the county jail for additional cases pending after a certified copy of the judgment and sentence has been entered;
 4. When an inmate is detained in the county jail and his or her status is on hold for another jurisdiction; or
 5. When an inmate is detained in the county jail and the inmate is sentenced to county jail time only.
Id. (emphasis added). *Page 4 
Except in certain specified circumstances, Section 38.3 provides that the Department of Corrections must reimburse health care providers for the cost of medical care and treatment of inmates retained in county jails after a judgment and sentence has been entered.Id. § 38.3(B), (E). The Department of Corrections must pay for their emergency and nonemergency care. Id. § 38.3(B). The Department of Corrections must pay for their medications. SeeId. § 38.3(D). Section 38.3 provides that the Department of Corrections is not responsible for paying for medical care and treatment in specified circumstances. Id. § 38.3(C), (H).[1] Subsection C of Section 38.3 requires the sheriff to pay for the health care of retained inmates in three circumstances. The sheriff must pay for:
 1. "health care screening when an inmate is admitted,"
 2. "routine sick calls within the county jail[,] and"
 3. "access to on-site physician services as is routinely provided for all inmates in the custody of the sheriff and as provided by Section 52 of Title 57 of the Oklahoma Statutes."[2]
Id. § 38.3(C).
 II. MEANING OF "ROUTINE SICK CALL WITHIN THE COUNTYJAIL"
Subsection (C) of Section 38.3 of Title 57 of the Oklahoma Statutes requires sheriffs to pay for "routine sick calls within the county jail" of inmates retained in county jails after judgment and sentence has been entered. Id. We have not located an express definition of "routine sick call" in the statutes or by administrative rule, but we find clarity through the plain reading of Section 38.3 *Page 5 
in conjunction with the use of the common meaning of the words.Id.; see also Anson Corp. v. Hill,841 P.2d 583, 585 (Okla. 1992) (providing that, in the absence of a contrary definition, words are to be given their ordinary and usual definition).
"Sick call" is commonly defined as "a scheduled time at which individuals (as soldiers) may report as sick to the medical officer." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1093 (9th ed. 1985). "Routine" is commonly defined as "of, relating to, or being in accordance with established procedure." Id. at 1027. Using a plain reading of Section 38.3 and the application of the common definition of these pertinent terms, the phrase "routine sick calls within the county jail" means sick calls occurring in accordance with established procedure set by a sheriff or county jail that take place inside the county jail. In other words, the sheriff determines the meaning of "routine sick call" within his or her county jail. The Department of Corrections is required to reimburse health care providers for any sick calls that occur outside the county jail and for sick calls that occur inside the county jail that are not routine. This plain reading is supported by the fact that the Oklahoma Legislature gave the responsibility over inmates to the Department of Corrections after judgment and sentence are entered.See, e.g. 57 O.S.Supp. 2010, §§ 37[57-37](D), 38, 38.3(B).
Whether or not a "sick call" is of the type that is in accordance with established procedure set within a county jail and is, therefore, routine, constitutes a question of fact specific to each jail and is beyond the scope of an Attorney General Opinion. 74 O.S.Supp. 2010, § 18b[74-18b](A)(5).
 III. CONSTITUTIONALITY OF SUBSECTION (C) OF SECTION 38.3 OF TITLE 57
The application of subsection (C) of Section 38.3 of Title 57 may not be constitutional in all instances. A recent official Attorney General Opinion is relevant to this question. Attorney General Opinion 2011-8 addresses the constitutionality of the use of county funds for state purposes or to support a state penal institution when a county pays costs relating to inmates retained in county jails after judgment and sentencing. Id. In that Opinion, the Attorney General addresses the constitutionality of the amount of the per diem payment made by the Department of Corrections to counties for retained state inmates held in county jails pursuant to Sections 37 and 38 of Title 57 of the Oklahoma Statutes. Id. The Oklahoma Supreme Court decision, State ex rel.Department of Human Services v. Malibie,630 P.2d 310 (Okla. 1981), is cited as the basis for the Opinion. The Attorney General concludes:
 When paying counties to defray the expense of retaining state inmates in county facilities pursuant to Section 37 of Title 57, the Department of Corrections must pay to counties an amount not exceeding a per diem of twenty-seven dollars ($27.00), unless that per diem amount is not sufficient to fully reimburse a county's cost of housing a prisoner. In such instances, the requirement in Section 1 of Article XXI of the Oklahoma Constitution that the state support penal institutions would require the state to fully reimburse the county. 57 O.S.Supp. 2010, § 38[57-38]; OKLA. CONST. art. XXI, § 1. In addition, the requirement in Article X, Section 9 of the Oklahoma Constitution that ad valorem tax revenues not be used to fund programs created to *Page 6 
accomplish a State purpose would require the state to fully reimburse the county so long as county ad valorem tax revenues were in fact used to make up a shortfall in the amount of funds necessary to defray the cost of housing the state inmates. 57 O.S.Supp. 2010, § 38[57-38]; Okla. Const. art. XXI, § 1; Okla. Const. art. X, § 9(a).
A.G. Opin. 2011-8, at 8-9.
Subsection (C) of Section 38.3 of Title 57 of the Oklahoma Statutes requires that sheriffs pay for "routine sick calls within the county jail" for inmates who are the responsibility of the Department of Corrections due to the fact that the inmates are retained in county jails after judgment and sentencing. Id. When the maximum per diem amount that can be paid pursuant to Section 38 of Title 57 of the Oklahoma Statutes is not enough to defray the full cost to a county to house an inmate who was retained by the county jail after judgment and sentencing, the Attorney General has opined that a county is financially supporting a state penal institution in violation of Section 1 of Article XXI of the Oklahoma Constitution. A.G. Opin. 2011-8, at 6 (citing OKLA. CONST. art. XXI, § 1;Malibie, 630 P.2d at 315, 317). Similarly, a county is financially supporting a state penal institution in violation of Section 1 of Article XXI of the Oklahoma Constitution when the county pays for routine sick calls within the county jail for inmates retained after judgment and sentencing as required by subsection C of Section 38.3 of Title 57. There is no constitutional violation when a county does not expend funds the county would not otherwise spend when providing routine sick calls to county inmates, e.g., some county jails may contract to pay a health care provider a flat rate to provide medical services to all inmates in the jail resulting in no additional costs to the county for providing the medical treatment to retained state inmates. SeeId. However, to the extent a county expends funds the county would not otherwise expend when providing routine sick calls to county inmates, 57 O.S.Supp. 2010, § 38.3[57-38.3](C) is unconstitutional as it requires counties to financially support a state penal institution by requiring counties to pay for medical care and treatment for inmates retained after judgment and sentencing.[3] Id.;
OKLA. CONST. art. XXI, § 1; Malibie, 630 P.2d at 315, 317; A.G. Opin. 2011-8.
In addition, the direct or indirect use of ad valorem tax revenues for a state purpose is a violation of Article X, Section 9 of the Oklahoma Constitution. A.G. Opin. 2011-8; OKLA. CONST. art. X, § 9(a);Malibie, 630 P.2d at 315-317. Therefore, to the extent a county expends funds the county would not otherwise expend for routine sick calls for county inmates, Article X, Section 9 of the Oklahoma Constitution is violated when a county uses ad valorem tax revenues, directly or indirectly, to pay for routine sick calls of retained state inmates as required by subsection C of Section 38.3.[4]
A.G. Opin. 2011-8; OKLA. CONST. art. X, § 9(a); Malibie,630 P.2d at 315-317; 57 O.S.Supp. 2010, § 38.3[57-38.3](C). *Page 7 
Whether a county expends funds the county would not otherwise expend when providing routine sick calls for county inmates in those circumstances in which the county provides routine sick calls within the county jail to retained state inmates constitutes a question of fact specific to each jail and is beyond the scope of an Attorney General Opinion. 74 O.S.Supp. 2010, § 18b[74-18b](A)(5).
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The phrase "routine sick calls within the county jail" means sick calls that takes place inside the county jail occurring in accordance with established procedure set by a sheriff or county jail. 57 O.S.Supp. 2010, § 38.3[57-38.3](C). The sheriff of each county is required to pay for sick calls of inmates retained in county jails after judgment and sentencing when those sick calls take place inside the county jail and take place in accordance with the established procedure set by a sheriff or county jail. Id. The Department of Corrections must reimburse health care providers for the cost of all sick calls of retained state inmates other than sick calls that fall within the meaning of "routine sick calls within the county jail" as that meaning is determined by each sheriff or county jail. Id. Whether or not a "sick call" is of the type that is in accordance with established procedure set within a county jail and is, therefore, routine, constitutes a question of fact specific to each county jail and is beyond the scope of an Attorney General Opinion. 74 O.S.Supp. 2010, § 18b[74-18b](A)(5).
 2. To the extent a county expends funds the county would not otherwise expend in providing routine sick calls for county inmates, 57 O.S.Supp. 2010, § 38.3[57-38.3](C) is unconstitutional as it requires counties to financially support a state penal institution by requiring counties to pay for medical care and treatment for inmates retained after judgment and sentencing. Id.; OKLA. Const. art. XXI, § 1; State ex rel. Dep't of Human Serv. v. Malibie, 630 P.2d 310 at 315, 317 (Okla. 1981); A.G. Opin. 2011-8.
 3. To the extent a county expends funds the county would not otherwise expend for routine sick calls for county inmates, Article X, Section 9 of the Oklahoma Constitution is violated when a county uses ad valorem tax revenues, directly or indirectly, to pay for routine sick calls of retained state inmates as required by subsection C of Section 38.3. A.G. Opin. 2011-8; Okla. Const. art. X, § 9(a); 57 O.S.Supp. 2010, § 38.3[57-38.3](C); Malibie, 630 P.2d at 315-17.
 4. Whether a county expends funds the county would not otherwise expend when providing routine sick calls for county inmates in those circumstances in which the county provides routine sick calls within the *Page 8 county jail to retained state inmates constitutes a question of fact specific to each jail and is beyond the scope of an Attorney General Opinion. 74 O.S.Supp. 2010, § 18b[74-18b](A)(5).
E. SCOTT PRUITT Oklahoma Attorney General
KARL F. KRAMER Assistant Attorney General
[1] Subsection H of Section 38.3 of Title 57 lists five (5) circumstances in which the Department of Corrections is not responsible for paying for health care of inmates in county jails, but those five (5) circumstances are not relevant to this discussion since they relate to situations in which the inmate is neither a state inmate retained by the county jail until space becomes available in the state penal system nor an inmate who has received judgment and sentencing and is not ready for transport to the state penal institution for reasons outside the control of the Department of Corrections.
[2] Section 52 of Title 57 of the laws of Oklahoma provides:
 It shall be the duty of the sheriff of each county to provide bed clothing, washing, board and medical care when required, and all necessities for the comfort and welfare of prisoners as specified by the standards promulgated pursuant to Section 192 of Title 74 of the Oklahoma Statutes and he shall be allowed such compensation for services required by the provisions of Sections 41 through 64 of this title, as may be prescribed by the county commissioners. All purchases made pursuant to the provisions of this section shall be made pursuant to the purchasing procedures specified in Sections 1500 through 1505 of Title 19 of the Oklahoma Statutes, including the use of blanket purchase orders as provided for in Section 310.8 of Title 62 of the Oklahoma Statutes.
Id. (emphasis added).
[3] An Attorney General's Opinion stating that an act of the Legislature is unconstitutional is advisory only and not binding on a state official. State ex rel. York v. Turpen,681 P.2d 763, 767 (Okla. 1984). Only a court of competent jurisdiction can issue a binding opinion that a legislative act is unconstitutional.Id.
[4] See n. 3. *Page 1